UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONIA M. HOWARD,<br><br>             Plaintiff,<br><br>      v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>             Defendant. | No.  2:14-cv-2162-KJN<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act").[1]  In her motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from March 27, 2007, plaintiff's alleged disability onset date, through April 3, 2014, the date of the final administrative decision.  (ECF No. 14.)  The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment, and plaintiff subsequently filed a reply brief.  (ECF Nos. 18, 20.)

---

[1] This action was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 7, 9.)

For the reasons discussed below, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and enters judgment for the Commissioner.

I. BACKGROUND

Plaintiff was born on November 18, 1972, has a GED, is able to communicate in English, and previously worked primarily as a cashier.[2]  (Administrative Transcript ("AT") 28, 132.)  On February 23, 2009, plaintiff applied for DIB and SSI, alleging that her disability began on March 27, 2007, and that she was disabled primarily due to depression, anxiety, bipolar disorder, post-traumatic stress disorder ("PTSD"), and a collapsed disc.  (AT 163-66, 170, 411.)  After plaintiff's applications were denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place before ALJ Mark Ramsey on May 24, 2011, and at which plaintiff, represented by an attorney, testified.  (AT 129-58.)  In a decision dated September 7, 2011, ALJ Ramsey determined that plaintiff was not disabled.  (AT 170-81.)  After obtaining a remand from the Appeals Council, an additional hearing was conducted before ALJ Eileen Burlison on May 14, 2013, at which plaintiff, represented by an attorney, and a vocational expert testified.  (AT 66-90.)  On June 13, 2013, ALJ Burlison also found plaintiff not disabled.  (AT 194-203.)  Thereafter, plaintiff received another remand from the Appeals Council, and a further hearing was conducted before ALJ Burlison on March 12, 2014, at which plaintiff, represented by an attorney, and a vocational expert testified.  (AT 39-65.)

In a subsequent decision dated April 3, 2014, ALJ Burlison again determined that plaintiff had not been under a disability, as defined in the Act, from March 27, 2007, plaintiff's alleged disability onset date, through the date of that decision.  (AT 19-30.)  ALJ Burlison's April 3, 2014 decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for further review on July 25, 2014.  (AT 1-3.)  Plaintiff then filed this action in

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

1  federal district court on September 17, 2014, to obtain judicial review of the Commissioner's
2  final decision. (ECF No. 1.)
3  II.     ISSUES PRESENTED
4  On appeal, plaintiff raises the following issues: (1) whether the ALJ improperly rejected
5  the opinion of consultative psychologist Dr. Richard Lewis; and (2) whether the ALJ erroneously
6  discounted plaintiff's own testimony concerning her symptoms and functional limitations.
7  III.    LEGAL STANDARD
8  The court reviews the Commissioner's decision to determine whether (1) it is based on
9  proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record
10 as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial
11 evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340
12 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable
13 mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th
14 Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is
15 responsible for determining credibility, resolving conflicts in medical testimony, and resolving
16 ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The
17 court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational
18 interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).
19 IV.     DISCUSSION
20          A.      Summary of the ALJ's Findings
21 The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's
22 standard five-step analytical framework.[3] As an initial matter, the ALJ noted that plaintiff met the

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401, et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382, et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

insured status requirements of the Act for purposes of DIB through September 30, 2012. (AT 21.) At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since March 27, 2007, plaintiff's alleged disability onset date. (Id.) At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, obesity, anxiety, bipolar disorder, depression, attention deficit disorder, mild intellectual disability, schizoaffective disorder, post-traumatic stress disorder, and borderline personality disorder. (Id.) However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 22.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, I find the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: the claimant could frequently perform postural activities. She should avoid hazards. She would be limited to simple and routine work. She would be limited to brief and superficial contact with the general public, supervisors, and coworkers.

---

Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing his past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

(AT 24.)

At step four, the ALJ found that plaintiff was unable to perform any past relevant work. (AT 28.) However, at step five, the ALJ determined, based on the VE's testimony, that, considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could perform. (AT 28-29.) Thus, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from March 27, 2007, plaintiff's alleged disability onset date, through the date of the ALJ's decision. (AT 29.)

      B.      Plaintiff's Substantive Challenges to the Commissioner's Determinations

           (1) Whether the ALJ improperly rejected the opinion of consultative psychologist Dr. Richard Lewis

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202. To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Id. at 831.

Consultative examining psychologist Dr. Richard Lewis evaluated and diagnosed plaintiff with bipolar II disorder hypomanic with mixed features, antisocial personality disorder, mild

////

////

intellectual disability, and continuous alcohol use disorder.  (AT 799.)[4]  Dr. Lewis opined that plaintiff was moderately limited in her ability to understand and remember simple instructions; markedly limited in her ability to carry out simple instructions and make judgments on simple work-related decisions; and extremely limited in her ability to understand and remember complex instructions, carry out complex instructions, make judgments on complex work-related decisions, interact appropriately with the public, interact appropriately with supervisors, interact appropriately with co-workers, and respond appropriately to usual work situations and the changes in a routine work setting.  (AT 791-93.)  In his narrative functional assessment, Dr. Lewis further emphasized that plaintiff's focus was poor, she was impulsive, she was "unable to carry out any level of instructions consistently in competitive work settings," and she was "unable to interact appropriately with supervisors, co-workers, and the general public."  (AT 798.)

Here, the ALJ permissibly gave little weight to Dr. Lewis's extreme limitations, because they are inconsistent with the weight of the medical evidence, which documents that, although plaintiff complained of severe depression, anxiety, mood swings, insomnia, and other mental symptoms, she frequently objectively presented to treating providers as cooperative, conversational, and pleasant with a bright affect, normal attention and concentration, intact memory, intact judgment and insight, and a linear and goal-directed thought process, particularly when she was compliant with a proper medication regimen.  (AT 25-26, 629, 631-32, 635-36, 726-27, 781, 783-84, 838, 840, 843, 845, 847, 849, 851, 854.)[5]  In March 2008, plaintiff obtained

---

[4] In several portions of the record, plaintiff acknowledged that she had a history of alcoholism and drug abuse (including methamphetamines, marijuana, PCP, LSD, and cocaine).  (AT 147.)  Notably, at the March 12, 2014 administrative hearing, plaintiff admitted that she had consumed alcohol "up to a month ago" and had used marijuana "about four months ago."  (AT 50.)  Although Dr. Lewis stated, in conclusory fashion, that plaintiff's limitations would be the same even if she did not consume alcohol (AT 798), he provided no reasoning or analysis in support of that assertion, and the ALJ likewise failed to perform a proper investigation and analysis regarding the materiality of plaintiff's alcoholism or drug abuse.  Nevertheless, because the court finds that substantial evidence supports the ALJ's decision that plaintiff was not disabled, a remand for a substance abuse materiality analysis is unnecessary.

[5] Plaintiff faults the Commissioner for citing to additional medical records not specifically cited by the ALJ.  However, the additional records cited all relate to the same ground relied upon by the ALJ for discounting Dr. Lewis's opinion – namely, that Dr. Lewis's opinion is inconsistent

a 30/30 score on a mini mental status examination performed by Northern Nevada Adult Mental Health. (AT 25, 616.) In September 2012, plaintiff's treating psychiatrist observed that plaintiff was less moody and irritable, euthymic with a congruent affect, and had a fairly good attention span for her community college classes. (AT 784.)

The ALJ also reasonably relied on the opinion of another consultative examining psychologist, Dr. Kendra Beitz Thompson. (AT 25, 618-24.) Dr. Thompson diagnosed plaintiff with a major depressive disorder (recurrent) vs. mood disorder not otherwise specified; anxiety disorder not otherwise specified vs. rule out posttraumatic stress disorder; rule out alcohol dependence; amphetamine dependence in sustained full remission; cannabis dependence in sustained full remission; and a GAF score of 51, which corresponds to moderate symptoms or moderate difficulty in social, occupational, or school functioning. (AT 622-23); see also Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000). Dr. Thompson opined that plaintiff was capable of consistently understanding, remembering, and carrying out simple tasks; but was not capable of consistently understanding, remembering, and carrying out complex or detailed tasks. (AT 622.) Dr. Thompson found that plaintiff was friendly and cooperative, and did not exhibit any inappropriate behaviors, but nonetheless indicated that plaintiff may have limitations in her ability to appropriately interact with supervisors, co-workers, and the public based on plaintiff's self-report of a history of yelling, throwing things, and mood swings resulting in police encounters. (Id.) Consistent with Dr. Thompson's opinion, the ALJ restricted plaintiff, *inter alia*, to simple and routine work, with only brief and superficial contact with the general public, supervisors, and coworkers. To the extent that Dr. Thompson's opinion was ambiguous regarding the extent of plaintiff's limitation in her ability to interact with other people, the ALJ's interpretation was reasonable in light of the weight of the medical evidence from treating providers, as discussed above.

////

---

with the weight of the medical evidence. By citing to additional medical records on appeal, the Commissioner is not seeking to have this court affirm the ALJ's decision on a new or independent ground not relied upon by the ALJ.

In sum, the ALJ provided specific and legitimate reasons for rejecting Dr. Lewis's opinion. While plaintiff unquestionably suffers from mental impairments resulting in significant functional limitations, the ALJ properly weighed the conflicting evidence and ultimately found, based on substantial evidence in the record as a whole, that such limitations were not present at a disabling level. The court thus defers, as it must, to the ALJ's rational resolution of conflicting evidence and ambiguities in the record.

(2) Whether the ALJ erroneously discounted plaintiff's own testimony concerning her symptoms and functional limitations

As noted above, plaintiff also contends that the ALJ improperly rejected plaintiff's own testimony regarding her symptoms and functional limitations.

In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking...." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the

"'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

In this case, the ALJ permissibly relied on the medical evidence, as properly weighed by the ALJ, to find plaintiff not completely credible. Although lack of medical evidence to fully corroborate the alleged severity of symptoms cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider. Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005).

Substantial evidence also supports the ALJ's finding that plaintiff's daily activities were inconsistent with her allegations of disabling symptoms and limitations. (AT 25, 28.) "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting...Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1112-13 (citations and quotation marks omitted); see also Burch, 400 F.3d at 680 (ALJ properly considered claimant's ability to care for her own needs, cook, clean, shop, interact with her nephew and boyfriend, and manage her finances and those of her nephew in the credibility analysis); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility).

In this case, plaintiff stated that she cooked, did laundry and housework, and, although she did not like being around other people, she acknowledged that she was able to go shopping and

1   use public transportation when necessary. (AT 399-407.) She took a trip to California to visit her
2   family in 2011. (AT 75.) She also went with her friend to a casino across the street about once a
3   month. (AT 143.) Plaintiff further testified that she attended community college accounting
4   classes, even though she also stated that she was not doing very well in those classes. (AT 84-
5   85.) Those activities plausibly suggest that plaintiff was not as limited as she claimed, and was
6   capable of at least simple and routine work, with only brief and superficial contact with the
7   general public, supervisors, and coworkers.

To be sure, the record also contains some contrary evidence suggesting that plaintiff's activities were more limited. However, it is the function of the ALJ to resolve any ambiguities, and the court finds the ALJ's assessment to be reasonable and supported by substantial evidence. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all of the activities and noting that the ALJ's interpretation "may not be the only reasonable one"). As the Ninth Circuit explained:

> It may well be that a different judge, evaluating the same evidence, would have found [the claimant's] allegations of disabling pain credible. But, as we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact. Credibility determinations are the province of the ALJ...Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.

Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

Finally, the ALJ's credibility analysis is further bolstered by record evidence concerning plaintiff's work history and reputation for truthfulness.[6] On the alleged disability onset date of March 27, 2007, plaintiff was terminated from her position as a full-time cashier at Walmart where she had worked since 2005, not because of problems with customers, co-workers, or supervisors, but because she had embezzled cash and store merchandise. (AT 134-35, 391-92.)

---

[6] In affirming the ALJ's credibility analysis, the court need not, and does not, rely on this independent ground not specifically mentioned in the ALJ's decision. It merely bolsters the ALJ's own sufficient reasons for discounting plaintiff's credibility.

Thereafter, while in a court diversion program, plaintiff was convicted two more times for theft, and was also arrested a couple of times for contempt of court, because, according to plaintiff, she had lied to the judge about a death in the family and had falsified related information. (AT 135-39.)

In light of the above, the court finds that the ALJ provided specific, clear, and convincing reasons for discounting plaintiff's testimony of disabling symptoms and functional limitations beyond the limitations assessed in the ALJ's RFC.

V.  CONCLUSION

For the foregoing reasons, the court concludes that the ALJ's decision is free from prejudicial error and supported by substantial evidence in the record as a whole. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14) is DENIED.

2. The Commissioner's cross-motion for summary judgment (ECF No. 18) is GRANTED.

3. Judgment is entered for the Commissioner.

4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated:  December 3, 2015

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE